UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODY SCIENCE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 11 C 03619 |
| BOSTON SCIENTIFIC CORPORATION, | ) |
| LIFEWATCH SERVICES, INC., | ) Judge Ruben Castillo |
| PHILIPS ELECTRONICS NORTH | ) |
| AMERICA CORPORATION, | ) |
| POLAR ELECTRO, INC., and | ) |
| A&D ENGINEERING, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Body Science, LLC ("Body Science" or "Plaintiff"), brings this patent infringement

action pursuant to 35 U.S.C. § 1, *et seq.* against Boston Scientific Corporation ("Boston

Scientific"), LifeWatch Services, Inc. ("LifeWatch"), Philips Electronics North America

Corporation, doing business as Philips Healthcare ("Philips"), Polar Electro, Inc. ("Polar"), and

A & D Engineering, Inc. ("A&D") (collectively, "Defendants"). (R. 30, Am. Compl.) Presently

before the Court are four Defendants' motions to sever and transfer pursuant to Federal Rules of

Civil Procedure 20 and 21, and 28 U.S.C. § 1404(a) ("Section 1404(a)").[1] (R. 53 Philips' Mot.

Sever; R. 62, Boston Scientific's Mot. Change Venue; R. 68, A&D's Mot. Sever; R. 86, Polar's

Mot. Sever). For the reasons stated below, all of Defendants' motions are granted.

### RELEVANT FACTS

---

[1] The moving Defendants are Philips, Boston Scientific, A&D, and Polar. For ease of
reference, the Court refers to the moving Defendants throughout the opinion as "Defendants."

1

Plaintiff is a limited liability corporation organized under the laws of Texas, with a principal place of business in Texas. (R. 30, Am. Compl. ¶ 1.) Plaintiff alleges that it "holds all right, title, and interest in and to" United States Patent No. 7,215,991 ("the '991 Patent") and United States Patent No. 6,289,238 ("the '238 Patent"), "including, without limitation, the rights to damages for past and present infringement." (*Id.* ¶¶ 14-15.) Both the '991 Patent and the '238 Patent (collectively, the "patents-in-suit") are entitled "Wireless Medical Diagnosis and Monitoring Equipment." (R. 30-1, U.S. Patent No. 7,215,991 (filed Mar. 24, 2003) ("'991 Patent"); R. 30-2, U.S. Patent No. 6,289,238 (filed Aug. 24, 1999) ("'238 Patent").) The United States Patent Office ("USPTO") issued the '991 Patent on May 8, 2007. (R. 30-1, '991 Patent.) The '238 Patent issued on September 11, 2001. (R. 30-2, '238 Patent.) The patents-in-suit are both directed to a medical system for monitoring body functions. (R. 30-1, '991 Patent; R. 30-2, '238 Patent.)

Defendants Philips, Boston Scientific, Polar, and LifeWatch are Delaware corporations. (R. 30, Am. Compl. ¶¶ 2-5.) Defendant A&D is a California corporation. (*Id.* ¶ 6.) Plaintiff alleges that Defendants have infringed the patents-in-suit "in violation of 35 U.S.C. § 271 through the manufacture, use, offer for sale, and sale of a wireless medical diagnostic and monitoring system." (*Id.* ¶¶ 20, 23, 26, 29, 32, 36, 39, 42, 45, 48.) By the Court's count, Plaintiff identifies over seventy-six products and product families ("Accused Products") that allegedly infringe the patents-in-suit. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff initiated this action on May 27, 2011. (R. 1, Compl.) On July 27, 2011, Plaintiff filed an amended complaint ("Amended Complaint") for patent infringement and damages. (R.

30, Am. Compl.) On August 26, 2011, Philips, Boston Scientific, and A&D filed answers and counterclaims. (R. 55, Philips' Answer; R. 61, Boston Scientific's Answer; R. 66, A&D's Answer.) Polar also filed its answer on August 26, 2011. (R. 65, Polar's Answer.) On that same day, Philips, Boston Scientific, and A&D also filed motions to sever and transfer venue. (R. 53, Philips' Mot. Sever; R. 62, Boston Scientific's Mot. Change Venue; R. 68, A&D's Mot. Sever.) On September 7, 2011, Polar also filed a motion to sever and transfer. (R. 86, Polar's Mot. Sever).

Philips, Boston Scientific, A&D, and Polar each argue that joinder of Defendants is improper because Plaintiff's claims do not meet the requirements for joinder. (R. 53, Philips' Mot. Sever at 1; R. 62, Boston Scientific's Mot. Change Venue at 1; R. 68, A&D's Mot. Sever at 1; R. 87, Polar's Mem. at 1.) Defendants each seek a transfer to other venues that they claim are more convenient. (R. 53, Philips' Mot. Sever at 1; R. 63, Boston Scientific's Mem. at 1-2; R. 68, A&D's Mot. Sever at 1-2; R. 87, Polar's Mem. at 1, 4.) In response, Plaintiff argues that its case "should proceed with all Defendants together, at least through discovery and a joint Markman proceeding." (R. 97, Pl.'s Resp. at 3.)

On October 3, 2011, LifeWatch filed a motion clarifying to the Court that "if this Court does not sever the claims against all of the parties, it should transfer the parties to the District of Massachusetts where all of the defendants have agreed in the alternative, to transfer, and where LifeWatch Services has consented to its transfer." (R. 110, LifeWatch Consent Mot. at 2.)

### DISCUSSION

### I.    Permissive joinder, misjoinder, and consolidation

Rule 20, which governs the permissive joinder of parties, provides that multiple

defendants may be joined in one action where (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Where parties fail to satisfy either of the requirements for permissive joinder, misjoinder occurs. Rule 21, governing misjoinder of parties, allows the Court to add or drop a party, or sever any claim against a party. Fed. R. Civ. P. 21. It is well-settled that a district court has "broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express*, 209 F.3d 1008, 1016 (7th Cir. 2000).

If joinder is improper, the Court may consider the possibility of consolidation under Rule 42(a). *See Rudd v. Lux Products Corp.*, No. 09-6957, 2011 WL 148052, at *1 (N.D. Ill. Jan. 12, 2011) (citing *Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29, 34 (N.D. Ill. 1980)). Where actions before a district court involve a common question of law or fact, Rule 42(a) allows a court to "(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The determination of whether to consolidate multiple suits lies within the discretion of the district court. *See Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, Nos. 11-2343, 11-2757, 2011 WL 6382203, at *5 (7th Cir. Dec. 16, 2011).

In their motions to sever, Defendants raise the same basic arguments that they are improperly joined in this action because Plaintiff has failed to assert any right to relief against Defendants arising out of the same transaction, occurrence, or series of transactions or occurrences. (R. 63, Boston Scientific's Mem. at 4; R. 68, A&D's Mot. Sever at 5; R. 87,

4

Polar's Mem. at 4.) All parties agree that Plaintiff has satisfied the second prong of Rule 20(a). (R. 97, Pl.'s Resp. at 10.) According to Defendants, the only commonality alleged by Plaintiff in the Amended Complaint against Defendants is that they all infringe the same patents. (R. 53, Philips' Mot. Sever at 5; R. 68, A&D's Mot. Sever at 5.) Additionally, Defendants contend that severance in this patent infringement action, in which Plaintiff accuses over seventy-six products, manufactured by five Defendants, of infringing the patents-at-issue, will serve the interests of justice and judicial efficiency because sorting through liability issues as to each of the Accused Products in one trial will likely confuse the trier of fact. (R. 63, Boston Scientific's Mem. at 6; R. 68, A&D's Mot. Sever at 7; R. 87, Polar's Mem. at 4.)

In assessing whether Plaintiff has met Rule 20(a)'s requirement that defendants may be joined where a right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences, the prevailing view in this District, and indeed in the majority of district courts, is "that a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent." *Rudd*, 2011 WL 148052, at *3 (collecting cases); *see also Pinpoint, Inc. v. Groupon, Inc.*, No. 11-5597, 2011 WL 6097738, at *1 (N.D. Ill. Dec. 5, 2011) ("We concur with our colleagues in this district, who have consistently held that the first element of Rule 20's joinder test is not met where, as here, plaintiff merely accused unrelated defendants of independently infringing the same patent."); *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. AZ. 2009) ("allegations against multiple and unrelated defendants for acts of patent, trademark, and copyright infringement do not support joinder under Rule 20(a)"); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) ("[T]he fact

5

that two parties may manufacture or sell similar products, and that these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 622 (N.D. Ill. 1998) (Where two defendants are alleged to infringe the same patents "that does not mean the claims against the two companies arise from a common transaction or occurrence."); *New Jersey Machine Inc. v. Alford Indus. Inc.*, No. 89-1879, 1991 WL 340196, at *2 (D. N.J. Oct. 7, 1991) ("[i]nfringement of the same patent by different machines and parties does not constitute the same transaction or occurrence to justify joinder"); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dean Witter Reynolds, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983) ("Allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction.")

Here, there are no allegations suggesting that Defendants were involved in any transaction, occurrence, or series of transactions or occurrences with each other. Plaintiff has not alleged that Defendants acted in concert or otherwise controlled or directed each others' conduct, nor are there any allegations to suggest that any of the Defendants' alleged infringement is in any way related. Defendants are separate companies that separately design, develop, manufacture, and sell different Accused Products. The only connection between Defendants is the fact that each Defendant is alleged to have infringed the patents-at-issue. Rule 20(a) requires both a "question of law or fact common to all defendants" *and* the same "transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Plaintiff has not made any such claims. Therefore, the Court finds that Plaintiff has failed to establish that it has met the first

requirement of Rule 20(a) and severs Plaintiffs' claims against Philips, Boston Scientific, A&D, and Polar from this case.

Seeking to avoid this result, Plaintiff relies on one unpublished order in *Acco Brands USA, LLC v. PC Guardian Anto-Theft Prods., Inc.*, No. 05-7102 (N.D. Ill. July 27, 2007) (order denying motions to sever and transfer), to argue that "[i]n multi-defendant patent infringement actions with defendants moving to sever, similar to this lawsuit, judges in this District and elsewhere have ruled against severance." (R. 97, Pl.'s Resp. at 7.) Plaintiff also relies on *Alford Safety Services, Inc., v. Hot-Hed, Inc.*, No. 10-1319, 2010 WL 3418233 (E.D. La. Aug. 24, 2010), and *Eolas Technologies, Inc. v. Adobe Systems, Inc.*, No. 09-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), to argue that a majority of district courts throughout the nation have held joinder to be proper as to unrelated patent infringement defendants. (*Id.* at 9, 11.) Finally, Plaintiff urges the Court to adopt a flexible interpretation of the term "transaction." (*Id.* at 10.) Plaintiff relies on *Thermapure, Inc. v. Temp-air, Inc.*, No. 10-4724, 2010 WL 5419090 (N.D. Ill. Dec. 22, 2010), to argue that "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence[,]'" (R. 97, Pl.'s Resp. at 10) (quoting *Thermapure, Inc.*, 2010 WL 5419090, at *2), and because Defendants' acts of infringement are logically related Plaintiff has met Rule 20(a)'s first requirement. (*Id.*)

As Defendants note, however, the view Plaintiff urges the Court to adopt is clearly in the minority. Indeed, through the enactment of the Leahy-Smith America Invents Act, Congress

abrogated the minority view and indicated that it favors the policy set forth in *Rudd.*[2] (R. 111,

Philip's Reply, at 2; R. 112, A&D's Reply, at 2; R. 109, Polar's Reply at 1-2.) In rejecting the

minority view, Congress cited this District as following the majority view and stated that the

views expressed in *Alford Safety Services, Inc.* and *Eolas Technologies, Inc.*, upon which

Plaintiff relies, were in the minority. (R. 109-2, H.R. Rep. No. 112-98, pt. 1, at 55 n.61 (2011).)

Additionally, Plaintiff does not dispute that merely alleging that multiple defendants have

infringed the same patent is not sufficient to satisfy the common transaction or occurrence

requirement absent additional commonalities. Plaintiff argues, however, that it has done more

than"merely alleged" infringement and it identifies four "additional commonalties" that it claims

support the notion that Defendants' alleged acts of infringement arise out of a common

transaction or occurrence. (R. 97, Pl.'s Resp. at 12-15.) According to Plaintiff, these four

commonalities are: (1) the Defendants' Accused Products are similar; (2) Defendants' Accused

Products share common underlying standards and protocols; (3) Boston Scientific and A&D

maintain a business relationship that utilizes shared resources; and (4) Defendants raise nearly-

identical defenses. (*Id.* at 12-14.)

First, Plaintiff argues that all of Defendants' "products provide individuals with a way of

wirelessly monitoring a body function related to their health[,]" and asserts that Philips

"exaggerates" the disparities between its products and other Defendants' products, such as

Polar's equine monitoring products. (*Id.* at 13.) According to Plaintiff, each accused infringing

---

[2] The Leahy-Smith America Invents Act ("the Act") became effective on September 16, 2011. Although the Act does not apply to civil actions commenced prior to September 16, 2011, the Act includes a provision stating that "accused infringers may not be joined in one action as defendants . . . or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b).

product is identical in that each "has a sensor, detecting an electric, physical, chemical or biological quantity of a patient; converting the detected signal to a digital format; and wirelessly communicating that information to an evaluator station." (*Id.* at 4.)

What Plaintiff argues is simply that each Defendants' Accused Products allegedly infringe the patents-in-suit. This argument is not persuasive because Plaintiff has failed to allege how any one Defendants' alleged acts of infringement are in any way related to any other Defendants' alleged acts of infringement. Plaintiff accuses over seventy-six products and product families that run the gamut from cardiac defibrillators, weight scales, ultrasound systems, and equine monitoring systems. (R. 30, Am. Compl. ¶¶ 9-13.) As in *Rudd*, the fact of the matter is that Defendants' Accused Products are entirely different and unrelated products. *See* 2011 WL 148052, at *2-*3 (finding that plaintiffs could not "satisfy Rule 20(a)'s same transaction or occurrences requirement based on their allegations that [the defendants'] alleged infringing [products] operate in a nearly identical manner as it relates to the asserted patents."); *see also Optimum Power Solutions, LLC v. Apple, Inc.*, No. 11-1509, 2011 WL 4387905, at *2-*3 (N.D. Cal. Sept. 20, 2011) (finding plaintiff's allegations insufficient to meet Rule 20(a) where plaintiff argued that each of the accused instrumentalities was comprised of similar pieces and therefore defendants allegedly infringed in "exactly the same fashion"); *see also Pinpoint, Inc.*, 2011 WL 6097738, at *1 (rejecting plaintiff's argument that the first requirement of Rule 20(a) was met because all of the accused products were similar).

Second, Plaintiff argues that through their membership in the "Continua Health Alliance" consortium, "Defendants cooperate on and apply standards-based protocols to facilitate interoperability." (R. 97, Pl.'s Resp. at 13.) Plaintiff files to cite any case law supporting its

contention that membership in an industry association may constitute the "same transaction or occurrence." Simply being a member of an industry organization does not indicate that Defendants have jointly designed, developed, manufactured, marketed, or sold their Accused Products.

Plaintiff further contends that because Defendants' Accused Products all operate under the "Bluetooth" standard, this "will present identical discovery, require identical depositions, and involve identical proofs of infringement under the Bluetooth and related standards." (*Id.* at 3, 13.) As Defendants point out, however, there are at least four versions of Bluetooth available and in 2011 more than three million Bluetooth devices were on the market. (R. 109, Polar's Reply at 2; R. 109-3, Bluetooth Definition from PC Magazine Encyclopedia; R. 112, A&D's Reply at 3-4.) Therefore, Plaintiff's argument that because Defendants' Accused Products all use Bluetooth, "identical discovery" issues will be present falls flat. Additionally, the alleged commonalties of Bluetooth and membership of the Defendants in the Continua Health Alliance are absent from Plaintiff's Amended Complaint. In light of this, the Court declines to conclude that Defendants' Accused Products share a commonality simply on the basis that Defendants are members of an industry association or that their Accused Products utilize Bluetooth.

Third, with respect to Boston Scientific and A&D, Plaintiff argues these Defendants "certainly meet the 'same transaction/occurrence'" requirement because "A&D sells at least one accused product to Boston Scientific." (*Id.*) In their briefs, Boston Scientific and A&D concede that A&D sells one of its six Accused Products to Boston Scientific. (R. 68, A&D's Mot. Sever at 2; R. 63, Boston Scientific's Mem. at 5-6, n.5.) This product, however, is only one out of a total of sixteen Accused Products between them that allegedly infringe the patents-in-suit.

Judicial economy and efficiency will therefore not be increased by maintaining them as joined Defendants and severance will avoid prejudice and confusion. *See Rice*, 209 F.3d at 1016 (noting that the court has broad discretion in deciding whether to sever parties). Furthermore, Plaintiff has failed to allege any connection between Boston Scientific and A&D in the Amended Complaint. While Plaintiff generally alleges that the infringement by Boston Scientific and A&D is "direct, as well as contributory, and by actively inducing infringement by others," nowhere in the Amended Complaint does Plaintiff allege that Boston Scientific and A&D are in any way connected.[3]

Fourth, Plaintiff argues that Defendants' "nearly-identical defenses" amount to the existence of a common transaction or occurrence and therefore supports joinder. (R. 97, Pl.'s Resp. at 14.) According to Plaintiff, "the existence of *any* common transactions or occurrences is sufficient to support joinder." (*Id.* at 15.) Plaintiff fails to cite any legal authority to support its argument, and other courts in this District have rejected similar arguments. *See Rudd*, 2011 WL 148052, at *4; *MLR, LLC v. U.S. Robotics Corp.*, No. 02-2898, 2003 WL 685504, at *3 (N.D. Ill. Feb. 26, 2003). Rule 20(a) requires "that a *claim* asserted against the Defendants arise out of the same transaction or occurrence." *MLR, LLC*, 2003 WL 685504, at *3. Therefore, "the fact that the defendants' defenses may arise out of the same transaction or occurrence is not sufficient for joinder under Rule 20(a)." *Id.* Accordingly, because Plaintiff has failed to establish that its claims arose out of the same transaction or occurrence, the Court concludes that Defendants have

---

[3] Plaintiff's reliance on an order issued in *Triangle Software, LLC v. Garmin Int'l, Inc.*, No. 10-1457, slip op. at 3 (E.D. Va. June 20, 2011), is unavailing. There, the court denied Volkswagen's motion to sever because plaintiff had alleged in its complaint that two other defendants had induced Volkswagen to infringe. *Id.* Here, there are no such allegations in the Amended Complaint connecting Boston Scientific and A&D.

been misjoined.

Finally, Plaintiff appears to request that even if the Court severs the cases, the derivative actions should be consolidated. (R. 97, Pl.'s Resp. at 15-16.) According to Plaintiff, "pretrial consolidation prevents 'duplicative efforts by the Court and counsel' because 'the same patent is at issue in each of the actions,' because the 'same documents and technical drawings will [probably] be solicited from plaintiffs,' and because the 'defendants will likely want to depose the same persons.'" (*Id.* at 16) (quoting *Magnavox*, 496 F. Supp. at 32-33 (N.D. Ill. 1980).) While the Court recognizes that a common question of law or fact exists, the Court finds that consolidation will not promote judicial economy or efficiency. Defendants are entirely different companies that are accused of infringing the patents-in-suit with over seventy-six Accused Products. As Philips points out, those Accused Products range from medical monitoring devices used in hospitals to equine heart monitors used to track race horses. (R. 53, Philips' Mot. Sever at 4.) There will undoubtedly be different documents, technical drawings, and witnesses solicited from each Defendant. Because the Court has already concluded that Defendants were misjoined, and because consolidation will not promote judicial economy or efficiency, it exercises its discretion and declines to consolidate the cases. *See Rudd*, 2011 WL 148052, at * 4.

## II.     Transfer

Defendants seek to have Plaintiff's cases against them transferred to venues that are more convenient to each Defendant. Philips argues that the case against it should be transferred to the Eastern Division of the District of Massachusetts. (R. 53, Philip's Mot. Sever at 8.) Boston Scientific urges the Court to transfer the case against it to the District of Minnesota. (R. 63, Boston Scientific's Mem. at 7.) A&D requests that the case against it be transferred to the

Northern District of California. (R. 68, A&D's Mot. Sever at 7.) Finally, Polar argues that Plaintiff's case against it should be transferred to the Eastern District of New York. (R. 87, Polar's Mem. at 5.)

Pursuant to Section 1404(a), a district court may transfer any civil action to any other district court where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C § 1404(a). Any party may move for transfer of venue under Section 1404(a), and the moving party bears the burden of demonstrating "that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

Transfer is appropriate under Section 1404(a) where: (1) venue is proper in both the transferor court and the transferee court; (2) the transferee district is more convenient for the parties and witnesses; and (3) transfer would serve the interests of justice. *Pinpoint, Inc.*, 2011 WL 6097738, at *2. "The weighing of factors for and against transfer . . . is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219. Section 1404(a) gives district courts discretion to adjudicate motions to transfer on a case-by-case consideration of convenience and fairness. 28 U.S.C. § 1404(a). Additionally, district courts are permitted to make any necessary factual findings when determining venue issues. *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

For the reasons stated below, the Court concludes that Defendants have met their burden of showing that the transferee forums are more convenient under Section 1404(a).

**A.     Venue**

There is no dispute that venue is proper in this District. (R. 97, Pl.'s Resp. at 17, n.9.)

Plaintiff argues, however, that Defendants have not established that venue is proper as to all Defendants in any of the transferee forums. (*Id.*) Because the Court has concluded that it will sever the cases as to Philips, Boston Scientific, A&D, and Polar, each of these Defendants need only show "that the transferee court [has] jurisdiction over the defendants in the transferred complaint." *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

In patent infringement actions, "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, "Philips' United States headquarters, which houses more than 2,300 employees, is located in Andover, Massachusetts." (R. 53-1, Ecker Decl. ¶ 3.) Accordingly, venue is proper for Philips in the District of Massachusetts. Boston Scientific "has three separate facilities in Minnesota, which together employ approximately 5,500 people." (R. 63-2, Cook Decl. ¶ 2.) Additionally, Boston Scientific's allegedly infringing products were designed, developed, tested, and manufactured in Minnesota. (*Id.* ¶¶ 3-8.) Accordingly, venue is proper for Boston Scientific in the District of Minnesota. A&D's headquarters are located in San Jose, California, where forty of its fifty-seven employees are located. (R. 69, Lau Decl. ¶ 3.) Accordingly, venue is proper for A&D in the Northern District of California. Finally, Polar's United States headquarters, and its only location in the United States, is in New Hyde Park, New York, within the Eastern District of New York. (R. 30, Am. Compl. ¶ 5; R. 87, Polar's Mem. at 3, 5.) Accordingly, venue is proper for Polar in the Eastern District of New York.

## B.    Convenience of parties and witnesses

The most important Section 1404(a) factor is whether the convenience of the parties and

witnesses favors transfer. *See, e.g., Simes v. Jackson Nat'l Life Ins. Co.*, No. 05-3816, 2005 WL 2371969, at *2 (N.D. Ill. Sept. 22, 2005); *Tong v. Direct Trading Corp.*, No. 02-8331, 2003 WL 22282466, at *4 (N.D. Ill. Oct. 1, 2003). In considering the convenience of one venue over another, courts consider five factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

### 1. Plaintiff's choice of forum

In general, a plaintiff's choice of forum is given considerable deference. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (quoting *Gulf Oil. Corp. v. Gilbert*, 300 U.S. 501, 508 (1947)); *see also FDIC v. Citizens Bank and Trust Co.*, 592 F.2d 364, 368 (7th Cir. 1979). That deference is lessened, however, where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001); *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). In patent infringement cases, "the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff." *Cooper Bauck. Corp. v. Dolby Labs., Inc.*, No. 05-7063, 2006 WL 1735282, at * 5 (N.D. Ill. June 19, 2006).

Plaintiff's chosen forum, the Northern District of Illinois, is not Plaintiff's home forum.

15

Plaintiff is a corporation organized under the laws of Texas with a principal place of business in Frisco, Texas. (R. 30, Am. Compl. ¶ 1.) Additionally, Defendants assert that all of the material events giving rise to this patent infringement action occurred outside of Illinois. While Defendants admit that they sell their Accused Products throughout the United States, including Illinois, (R. 53-1, Ecker Decl. ¶ 19; R.63-2, Cook Decl. ¶ 6; R. 69, Lau Decl. ¶ 5), "[s]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Sys., Inc. v. R&D Concrete Products, Inc.*, 55 F. Supp.2d 871, 874 (N.D. Ill. 1999).

Here, as in *Anchor Wall Systems*, the Northern District of Illinois has relatively weak connections with the operative facts giving rise to the litigation, as only a fraction of the Accused Products are sold in Illinois. *Id.* Rather, the majority of operative events surrounding the alleged infringement as to each Defendant occurs in other states. For instance, Philips asserts that the sale and marketing of some of its Accused Products is coordinated from its Andover, Massachusetts headquarters. (R. 53-1, Ecker Decl. ¶ 5.) Additionally, some of its Accused Products are also designed or manufactured in Andover, Massachusetts. (*Id.* ¶¶ 6-7.) Boston Scientific asserts that its Accused Products are designed, developed, tested, manufactured, and sold by its Cardiac Rhythm Management Group ("CRM Group"), which is headquartered in St. Paul, Minnesota. (R. 63-2, Cook Decl. ¶¶ 4-5, 8.) A&D asserts that it is involved in the development, importation, marketing, and sales of measurement devices, but that a substantial amount of research, development, and manufacturing for the A&D Accused Products occurs outside the United States, in Japan or China. (R. 69, Lau Decl. ¶¶ 3, 6.) Finally, Polar asserts that its only location is in New Hyde Park, New York, (R. 87, Polar Mem. at 3), and that while it

does not design or manufacture any of its Accused Products, it is the exclusive distributor of the products of Polar Elecro Oy., (R. 87-7, Douglas Decl. ¶¶ 1, 6), of which it is a wholly owned subsidiary. (R. 87, Polar's Mem. at 3.) Accordingly, in comparison to the proposed transferee venues, the Northern District of Illinois has relatively weak connections to the operative facts giving rise to the litigation.

Finally, Plaintiff's only apparent connection to the Northern District of Illinois is through its counsel, which is located in Illinois. It is well-settled, however, that consideration of the convenience of Plaintiff's counsel is not an appropriate factor to consider when evaluating transfer. *Von Holdt*, 887 F. Supp. at 190; *see also In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."); *Chi. Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955).

Therefore, because Plaintiff's chosen forum is not its home forum and this District has relatively weak connections with the operative facts giving rise to the litigation, Plaintiff's choice of forum is entitled to little weight.

## 2. Situs of material events

Plaintiff contends that the situs of material events is in Illinois, because each of the Defendants have sold their Accused Products in Illinois. In patent infringement actions, however, "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994). Courts applying this test focus "on the location of the allegedly infringing sales, or the alleged infringers's place of business." *See Ellis Corp v.*

*Jensen USA, Inc.*, No. 02-7380, 2003 WL 22111100, at * 3 (N.D. Ill. Sep. 9, 2003). The fact that Defendants sell their Accused Products in Illinois is not determinative, as Defendants also sell their Accused Products throughout the country. *See e.g., Thermapure*, 2010 WL 5419090, at *6 ("[plaintiff's] contention that the material events occurred in Illinois because [defendant] sold products to customers in Illinois is unavailing" because defendant sold allegedly infringing products throughout the United States); *see also Anchor Wall Sys., Inc.*, 55 F. Supp. 2d at 874 (finding that "all of the central facts surrounding [the] patent infringement dispute relate to activities which took place" inside the transferee district because defendant "manufactured, stored, and sold the alleged infringing [products]" in the transferee district).

Furthermore, as discussed above, each Defendant designs, develops, manufactures, and coordinates the marketing and sale of their Accused Products in other states, or outside of the United States. First, with respect to Philips, this factor weighs in favor of transfer because its products are sold and marketed from Andover, Massachusetts, and some of its Accused Products are designed or manufactured in Andover, Massachusetts. (R. 53-1, Ecker Decl. ¶¶ 5-7.) Next, Boston Scientific's design, development, testing, manufacturing, and marketing of the Accused Products occurs in Minnesota. (R. 63-2, Cook Decl. ¶¶ 4-5, 7-8, 11.) Accordingly, Minnesota is the situs of material events that are relevant to Plaintiff's infringement claims against Boston Scientific. Because the situs of material events is in Minnesota, this factor weighs in favor of transfer as to Boston Scientific. Third, A&D is a subsidiary of A&D Company Limited, a Japanese company that develops, designs, manufactures, produces, and sells measuring devices. (R. 69, Lau Decl. ¶ 4.) A&D asserts that it is involved in the "development, importation, marketing, and sales of measurement devices," as opposed to the design and manufacturing of

Accused Products. (*Id.* ¶ 3.) Therefore, A&D asserts that "all documents and physical evidence" relating to its Accused Products will "either be found outside the United States (either in Japan or China, where substantial research and development and all manufacturing for [its] Accused Products takes place) or at [its] headquarters" in Northern California. (*Id.*) The situs of material events for A&D therefore appears to be Northern California, and this factor weighs in favor of transfer as to A&D. Finally, Polar is a wholly-owned subsidiary, and exclusive distributor of the products of Polar Electro Oy, a Finnish company. (R. 81, Polar's Corp. Disc.; R. 87-7, Douglas Decl. ¶ 2.) Polar does not design or manufacture any products, and its only United States location is in New York. (R. 87-7, Douglas Decl. ¶ 6; R. 87, Polar's Mem. at 3.) Accordingly, the situs of material events for Polar is New York, and this factor weighs in favor of transfer as to Polar. Therefore, the Court concludes that this factor weighs in favor of transfer as to each Defendant.

### 3.     Access to sources of proof

To establish liability in a patent infringement case, plaintiffs generally need to "discover primarily the design, development and engineering of the accused device." *Ambrose v. Steelcase, Inc.*, No. 02-2753, 2002 WL 1447871, at *3 (N.D. Ill. July 3, 2002). Accordingly, "more focus is placed on the location of defendant's activities, employees, and facilities." *Cooper Bauck Corp.*, 2006 WL 1735282, at *2; *see also Ellis Corp.*, 2003 WL 22111100, at *3 ("patent infringement suits usually focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiff"); *PinPoint*, 2011 WL 6097738, at *3 ("the location of [Plaintiff's] documents is not a significant consideration because it is "Defendant's documents that will constitute the bulk of the relevant evidence").

19

Here, Philips maintains its headquarters and sales offices in Massachusetts, and therefore it asserts that many sales documents and financial records will likely be located in Massachusetts. (R. 53-1, Ecker Decl. ¶ 4.) Additionally, because many of its Accused Products were designed and developed in Massachusetts, documents relating to those Accused Products will be located in Massachusetts. (*Id.* ¶¶ 14-15, 18.) Second, to the extent Plaintiff seeks to discover documentary or other physical evidence of Boston Scientific's design and manufacture of the Accused Products, that evidence will likely be found in Minnesota, where its Accused Products are designed, developed, tested, and manufactured. (R. 63-2, Cook Decl. ¶¶ 4-5, 7-8, 15.) With respect to A&D, all documents and physical evidence regarding its Accused Products will either be found outside of the United States, where substantial research, development, and manufacturing takes place for its Accused Products, or in Northern California, where it is headquartered and where a majority of its employees are located. (R. 69, Lau Decl. ¶¶ 3, 6.) While A&D has two employees in Illinois, it asserts that these two employees work from their homes and neither of these employees is involved in the Accused Products herein at issue. (*Id.* ¶ 3.) Finally, to the extent Plaintiff seeks documents regarding Polar's sale and marketing of the Accused Products, those documents are located in New York, as are Polar's employees who are knowledgeable about the sale and marketing of Polar's Accused Products. (R. 87-7, Douglas Decl. ¶¶ 4-5.)

Although Plaintiff argues that there are third party records, available only in hard copy format, that are located in Chicago, this argument is not persuasive. (R. 97, Pl.'s Resp. at 6.) The records Plaintiff refers to are records related to a prior litigation involving different parties. (R. 97, Pl.'s Resp. at 6, 20.) Assuming the documents from the prior litigation are relevant to the

present case, Plaintiff itself recognizes that "documents now are easily scanned, stored, and electronically transmitted, [and] moving them no longer creates the onerous burden it may once have imposed." *Unomedical A/S v. Smiths Medical MD, Inc.*, No. 09-4375, 2010 WL 2680144, at *2 (N.D. Ill. June 30, 2010). For the same reason, Plaintiff's assertion that this factor weighs against transfer because the prosecution records of the patents-at-issue exist in hard copy in Chicago falls flat. (R. 97-2, Sendek Decl ¶ 4.) Furthermore, while Plaintiff contends that these documents are more burdensome to move than Defendants' documents, Plaintiff has no basis for making those assertions. Even though the Court recognizes that documents today are easily transmitted, this factor weighs slightly in favor of transfer as to all Defendants.

### 4. Convenience of the witnesses

The convenience of the witnesses is often considered the most important factor in the transfer analysis. *See Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004). "To determine the convenience to the witnesses, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Id.* Additionally, "the convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007).

Defendants all assert that this factor weighs in favor of transfer. Philips asserts that those witnesses most knowledgeable about the operation, marketing, and sale of its Accused Products reside in Massachusetts, whereas no potential witnesses reside in Illinois. (R. 53-1, Ecker Decl. ¶¶9-10, 16-17, 20.) Philips contends that while it maintains offices in Illinois, none of its Accused Products were developed or manufactured in Illinois. (*Id.* ¶ 19.) Boston Scientific asserts that

"[t]he vast majority of BSC employees in the United States that are involved with the design, development, testing, and manufacture of the CRM Products are located in Minnesota." (R. 63-2, Cook Decl. ¶ 9.) Additionally, Boston Scientific has identified five witnesses who are located in Minnesota, and further asserts that it "is not aware of any witnesses in this district with knowledge of the design, development, testing, and manufacture of the [Accused] Products." (*Id.* ¶¶ 10, 14.) A&D asserts that any potential witnesses with knowledge relevant to the allegations in the Amended Complaint would be located in either California or Georgia. (R. 69, Lau Decl. ¶ 7.) According to A&D, its only employees involved in research and development associated with the Accused Products are located in California. (*Id.*) Polar asserts that its employees are located in New York. (R. 87, Polar's Answer at 6-7.) Finally, Defendants also note that the inventors of the patents-in-suit are located in Germany, so any district in the United States is as convenient for them as this District. (R. 53, Philips' Answer at 10; R. 87, Polar's Mem. at 7.)

Plaintiff argues that Defendants have improperly focused on the convenience to their employees, rather than on the convenience to non-party witnesses. (R. 97, Pl.'s Resp. at 20.) Plaintiff further asserts that it has identified numerous non-party witnesses it intends to call as witnesses, including the prosecuting attorneys for the patent-in-suit and Motorola employees who are "familiar with the facts surrounding the value of the patents to Motorola's business and Motorola's acquisition of them." (*Id.* at 21-22, 6-7.) As an initial matter, the Court is hard-pressed to see how the testimony of Motorola employees is relevant to the current case. Motorola is not a party to this action and it no longer owns the patents-in-suit, rather Plaintiff now owns the patents-in-suit. (R. 30, Am. Compl. ¶ 14; R. 97, Pl.'s Resp. 5-6.) Furthermore,

22

the prior litigation involved different Defendants and different Accused Products.

With respect to the prosecuting attorneys, it is relevant that Defendants have raised defenses of laches, prosecution history estoppel, and unclean hands that will require them to discover material relating to the prosecution history of the patents-in-suit. (R. 55, Philips' Answer; R. 61, Boston Scientific's Answer; R. 66, A&D's Answer; R. 65, Polar's Answer.) That said, "the location of such non-party witnesses is an important factor only when court compulsion is necessary to get such witnesses to testify." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 09-1, 2009 WL 1615528, at *4 (W.D. Wis. June 9, 2009) (citing *Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.), Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005). While Plaintiff argues that these non-party witnesses are likely to be within the compulsory process of this Court, they fail to explain why they cannot provide the prosecuting attorneys' testimony via deposition testimony. *Id.* ("[I]n patent actions, depositions are customary and are satisfactory as a substitute for technical issues.") (quotations omitted).

Because Defendants' witnesses are located in the transferee forums, the inventors are located outside of the United States in Germany, and the prosecuting attorneys' testimony may be presented via deposition testimony, this factor is neutral as to whether transfer is appropriate in this case.

### 5. Convenience of the parties

In considering the convenience of the parties, a court should consider the parties' respective residence and their ability to bear the expenses of litigating in a particular forum. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998); *see also Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10-1101, 2010 WL 3516106, at *4 (N.D. Ill. Sept. 1,

2010).  In patent infringement cases in particular, practicality and convenience for the parties are best served when the suit is litigated "where the alleged acts of infringement occurred and the defendant has a regular and established place of business, so as to facilitate the production and investigation of books, records and other data necessary to the discovery and trial techniques employed in the patent filed." *Anchor Wall Sys.*, 55 F. Supp. 2d at 875.

With respect to Boston Scientific and Philips, Plaintiff initially argues that they "have previously litigated numerous lawsuits in the Northern District of Illinois." (R. 97, Pl.'s Resp. at 20.)  The transfer analysis, however, is done on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (quotations omitted).

Because this District is not particularly convenient for either party, this factor weighs in favor of transfer.  Considering that Plaintiff is a Texas corporation with a principal place of business in Texas, this District does not appear to be a convenient forum for it.  Additionally, as discussed above, each Defendants' employees and relevant documentary evidence is located in the transferee forums.  Further, where Plaintiff "must travel regardless of whether this court transfers venue," but Defendants "must travel only if the case proceeds in [Illinois,]" *Ambrose*, 2002 WL 1447871, at *4, this factor weighs in favor of transfer.  Accordingly, the overall convenience of the parties and witnesses supports transfer.

### C.      Interest of justice

Next, the Court must consider whether transfer is in the interest of justice.  This inquiry "is a separate element of the transfer analysis that relates to the efficient administration of the

court system." *Research Automation, Inc.*, 626 F.3d at 978. In considering the interest of justice, a court should consider, *inter alia*: (1) the speed at which the case will proceed to trial in the transferor and potential transferee forums; (2) each court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue. *See id.* at 978; *Coffey*, 796 F.2d at 221. The interest of justice component "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (internal citations omitted).

### 1. Speed to Trial

Philips has requested that Plaintiff's case against it be transferred to the District of Massachusetts. In the Northern District of Illinois, the median time to civil disposition is 6.3 months, and the median time to trial is 26.3 months. (R. 53, Philips' Mem. at 11; R. 63, Ex. C.) In the District of Massachusetts, those times are 8.8 months and 31.1 months, respectively. (*Id.*) While the time to disposition and trial in this District was slightly faster, the Court does not find that the slight disparity outweighs the other factors favoring transfer to the District of Massachusetts.

Boston Scientific requests that Plaintiff's suit against it be transferred to Minnesota. The median time to civil disposition in the District of Minnesota is 4.4 months, and the median time to trial is 22.4 months. (R. 63, Ex. B.) Because these times are slightly faster in the District of Minnesota, this factor weighs slightly in favor of transfer.

Because A&D fails to put forth any evidence regarding speed to trial in the Northern District of California, the Court finds that A&D fails to carry its burden on this factor, and that

this factor therefore weighs against transfer as to A&D.

Polar requests that Plaintiff's case against it be transferred to the Eastern District of New York. In the Eastern District of New York, the median time to civil disposition is 8.8 months, and the median time to trial is 30.9 months. (R. 87-1, Moran Decl., Ex. E.) Again, while the median time to trial in this District was slightly faster, the Court does not find that the slight disparity outweighs the other factors favoring transfer to the Eastern District of New York.

### 2.    Court's familiarity with applicable law

Because patent infringement is a question of federal law, both this Court and any transferee court are "equally well-equipped to accommodate patent infringement cases." *Cooper Bauck Corp.*, 2006 WL 1735282, at *7. Therefore, this factor is neutral as to all Defendants.

### 3.    Desirability of resolving controversies in each locale and relation of each community

The Court finds that the third and fourth factors also favor transfer. "Where an accused product is distributed and sold throughout the United States, several states share an interest in redressing the alleged infringement." *Cooper Bauck*, 2006 WL 1735282, at *7 (quotations omitted). On the other hand, the forum where the research, development, testing, marketing, and sale of accused products occurred has a greater interest in the suit than other states. *Id.* Here, because the only relevant activity that occurred in Illinois as to each Defendant is the sale of Accused Products, Illinois does not have a greater interest in the suit than other states.

On the other hand, many of Philips' Accused Products were developed in Massachusetts and are manufactured, marketed, and sold in Massachusetts. (R. 53-1, Ecker Decl. ¶¶ 5-7, 13-14.) As to Philips, therefore, Massachusetts has a greater interest in Plaintiff's patent

infringement suit against Philips, and this factor weighs in favor of transfer.

Boston Scientific's Accused Products were manufactured, developed, and marketed in Minnesota. (R. 63-2, Cook Decl. ¶¶ 4-5, 7-8, 11.) As to Boston Scientific, therefore, Minnesota has a greater interest in Plaintiff's patent infringement suit against Boston Scientific, and this factor weighs in favor of transfer.

Because A&D is headquartered in Northern California, the Northern District of California has a greater interest in Plaintiff's patent infringement suit against A&D than the Northern District of Illinois. *See Heil Co. v. Curotta Can Co.*, No. 02-782, 2004 WL 725737, at *3 (N.D. Ill. Mar. 30, 2004) ("Illinois does not have a strong interest in adjudicating a case between two companies neither of which is located in this State, and California has a greater interest in resolving a patent infringement action involving a company headquartered in California."). Similarly, Polar is headquartered in the Eastern District of New York, and therefore the Eastern District has a greater interest in Plaintiff's suit against Polar than the Northern District of Illinois.

Therefore, after careful consideration and having weighed all the factors discussed above, the Court finds that Defendants have met their burden of demonstrating that their proposed transferee forums are clearly more convenient than the Northern District of Illinois.

### III.    Motion to Disqualify

Plaintiff has also filed a motion seeking to disqualify Winston & Strawn LLP, counsel for Boston Scientific. (R. 39, Pl.'s Mot. Disqualify; R. 41, Pl.'s Mem.) Plaintiff argues that one of Winston & Strawn's attorneys previously represented Motorola, the former owner and a current licensee of the patents-in-suit, during prior litigation involving the patents-in-suit, and therefore a clear conflict exists. (R. 41, Pl.'s Mem. at 1-2.) In light of the Court's decision to transfer

Plaintiff's case against Boston Scientific to the District of Minnesota, the Court finds that the motion to disqualify may be moot. Therefore, the Court will deny the motion to disqualify without prejudice to its renewal in the District of Minnesota.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to sever and transfer (R. 53; R. 62; R. 68; R. 86). The Clerk of the Court is directed to transfer the cases against Philips, Boston Scientific, A&D, and Polar in accordance with this decision. Specifically, the case against Philips is transferred to the Eastern Division of the District of Massachusetts. The case against Boston Scientific is transferred to the District of Minnesota. The case against A&D is transferred to the Northern District of California, and the case against Polar is transferred to the Eastern District of New York. The remaining parties, Body Science and LifeWatch, shall appear for a status hearing on March 27, 2012, at 9:45 a.m. to set a firm litigation schedule. The remaining parties should also exhaust any settlement possibilities.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** March 6, 2012

28