IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Body Science LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 12-cv-10536 |
| v. ) | |
| ) | Judge Denise J. Casper |
| Philips Electronics North America Corporation. ) | |
| ) | **JURY TRIAL REQUESTED** |
| Defendants. ) | |
| ) | |
| ) | |

## DEFENDANT PHILIPS ELECTRONIC NORTH AMERICA CORPORATION'S INITIAL DISCLOSURE OF INVALIDITY AND NON-INFRINGEMENT CONTENTIONS

Pursuant to Section A(3) of the Court's Scheduling Order, Philips Electronics North America Corporation ("Philips") hereby provides its Initial Disclosure of Invalidity and Non-Infringement Contentions.

**I.      PHILIPS' INITIAL DISCLOSURE OF INVALIDITY CONTENTIONS**

    **A.      Philips' Identification of Prior Art**

Philips has appended claim charts as Exhibits A and B that disclose how certain prior art references disclose the subject matter claimed in U.S. Patent Nos. 6,289,238 (the "'238 patent") and 7,215,991 (the "'991 patent"). Additionally, Philips incorporates by references the Requests for Reexamination of the '238 and '991 patents, 90/012,373 and 90/012,372, respectively. Because this Court has not yet construed the claim terms, these contentions are based upon the scope of the claims asserted by Body Science and previous plaintiffs. By providing these contentions, Philips does not concede that the claims should be construed in a particular manner, and Philips' positions may change based on the Court's future claim construction rulings. While

1

Philips has identified certain exemplary sections of each reference that disclose the subject matter of the claims, Philips reserves the right to rely upon any part of the identified references.

Philips has included exemplary obviousness combinations that show how these references render the claims obvious. However, these combinations are merely offered for illustrative purposes and Philips contends that one of ordinary skill would be motivated to combine any of the identified references to render the claims obvious.

The claims of the '238 and '991 patents generally recite (A) a patient monitoring system having sensors and wireless telemetry; (B) various wireless features of the patient monitoring systems; and (C) various sensor features. These claims are nothing more that the "combination of familiar elements according to known methods" that achieves "no more than predictable results." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). Particularly, the claims do not recite any novel or unpredictable combinations of wireless, sensor, and monitoring features. Rather the claims merely aggregate known features of the prior art in a single claim. Accordingly, one or ordinary skill would be motivated any of the known features disclosed in any of the references herein to obtain the predictable results recited in the claims.

For example, Exhibit A11 discloses how certain sensor features of EP 0553372 to Pross could be combined with the wireless telemetry system of U.S. Patent No 5,372,607 to Stone to render certain '238 claims obvious. However, the sensors disclosed in Pross could easily be combined with any of the other disclosed telemetry systems. Similarly, Exhibit B2 discloses how certain wireless features of U.S. Patent No. 5,502,726 to Fischer could be combined with the telemetry system in U.S. Patent No. 5,348,008 to Bornn. However, it would be obvious to combine the wireless features of Fischer with any of the identified wireless telemetry systems.

Philips' investigation, research, and analysis of the issues in this case are ongoing. Philips expressly reserves the right to supplement its prior art references. Additionally, to the extent that

Body Science asserts additional claims against Philips, Philips expressly reserves the right to supplement its analysis, including adding additional references and or providing charts explaining how its identified references also anticipate and/or render obvious the newly-asserted claims.

### B.   Philips' Identification of Additional Grounds for Invalidity

The specifications of the '238 and '991 patents are deficient for failing to meet the written description and enablement requirements of 35 USC § 112 with respect to at least the limitations described below.

#### 1.   "manipulate the data"

Claims 1-35 of the '238 patent and claims 30, 45, 53-78, and 85-87 of the '991 patent recite that an evaluation station can "manipulate" data sent from the electrode. The only example of manipulation disclosed in the specifications of the '238 and '991 patents is increasing the amount of data redundancy. A person of ordinary skill in the art would have no reason to believe the inventors possessed an invention which manipulated the electrodes' transmissions in a manner other than increasing the data redundancy. To the extent the claims identified above cover manipulation by a technique other than increasing the amount of redundancy, they are invalid for lack of written description.

Similarly, the specifications of the '238 and '991 patents do not teach one of ordinary skill in the art how to increase the redundancy of the data transmitted from the electrode or to initiate any other modifications of the data. Accordingly, the specifications of the '238 and '991 patents do not enable one of ordinary skill to practice the full scope of the claims identified above.

#### 2.   "change a format" "change the format"

Claims 1-53 and 79-84 of the '991 patent recite that an evaluation station can change the format of data transmitted from the electrode. The only example of format change disclosed in

the specification is increasing the amount of redundant information.  A person of ordinary skill in the art would have no reason to believe the inventors possessed an invention that changed formatting data in a manner other than increasing the data redundancy.  To the extent the claims identified above cover format changes other than increasing the amount of redundancy, they are invalid for lack of written description.

Similarly, the specification of the '991 patent does not teach one of ordinary skill in the art how to change the redundancy of the data transmitted from the electrode or to initiate any other modifications of the data.  Accordingly, the specification of the '991 patent does not enable one of ordinary skill to practice the full scope of the claims identified above.

        3.     "formatting data"

Claims 1-36 and 79-81 of the '991 patent recite  "formatting data" transmitted from the evaluator station that changes the data transmitted from the electrode.  The specification of the '991 patent does not disclose any  examples of formatting data.  Accordingly, a person of ordinary skill in the art would have no reason to believe the inventors possessed an invention that included "formatting data."  Additionally, to the extent that the claims cover changes other than increasing an amount of redundant data a person having ordinary skill in the art would have no reason to believe the inventors possessed an invention that included "formatting data" sufficient to initiate all types of format changes.  Accordingly, the claims of the '991 patent identified above are invalid for lack of written description.

Similarly, the specification of the '991 patent does not teach one of ordinary skill how to create or organize formatting data, let alone formatting data sufficient to initiate all types of format changes.  Accordingly, the specification of the '991 patent does not teach one of ordinary skill in the art how to practice the full scope of the claims identified above, and they are invalid for lack of enablement.

4

4. Unenclosed Components

All claims of the '238 and '991 patents recite various components (which vary depending on the claim) that communicate with an evaluation station. The specifications of the '238 and '991 patents refer to this collection of components as the electrode or a covering. A person of ordinary skill in the art would have no reason to believe the inventors possessed an invention in which any of these components were not within the electrode/covering. To the extent the claims cover components that are not within the electrode/covering, they are invalid for lack of written description.

5. Electrode and Sensor Component Limitations

All claims of the '238 and '991 patents recite various components (which vary depending on the claim) that communicate with an evaluation station. The specifications of the '238 and '991 patents refer to this collection of components as the electrode or a covering.

The only embodiment of the claims disclosed in the '238 and '991 patents is a portable and fully enclosed electrode. Accordingly, a person of ordinary skill in the art would understand the scope of the invention to include the portable, fully enclosed devices provided in the specifications of the '991 and '238 patents. However, based on the technology of the time and the limited disclosure of the '238 and '991 patents a person of ordinary skill in the art would have no reason to believe the inventors possessed an invention in which all of these components could fit into a portable electronic device. Accordingly, the claims are invalid for lack of written description.

Similarly, the specifications of the '991 and '238 patents do not teach one of ordinary skill in the art how to make functional versions of the portable electrodes disclosed in the '238 and '991 patents. Accordingly, the claims are invalid for lack of enablement.

5

6.   Transmission of Analog Data

Claim 53-78 and 85-87 of the '991 patent are invalid because they do not limit the transmission to digital transmissions or include analog to digital conversion. A person of ordinary skill in the art would have no reason to believe the inventors possessed an invention in which analog data was transmitted. Accordingly, the claims identified above are invalid for lack of written description.

Similarly, the specification of the '991 patent does not teach one of ordinary skill in the art how to implement a format change for analog data. Accordingly, the claims identified above are invalid for lack of enablement.

7.   Failure to Interrelate Essential Elements

Claim 53-78 and 85-87 of the '991 patent and its dependent claims are invalid because they fail to interrelate essential elements of the invention. For example, these claims fail to define the relationship between the first sensor, the first transmitter, and the first receiver.

C.   **Philips' Production of Prior Art**

Concurrent to this filing Philips produces documents bates numbered PHIL-BOD00007733 to PHIL-BOD00009763 and PHIL-BOD00010351.

## II.   PHILIPS' INITIAL DISCLOSURE OF NON-INFRINGEMENT CONTENTIONS

A.   **Philips' Non-Infringement Contentions**

Philips incorporates the following objections to Body Science's Initial Infringement Contentions:

1.   Philips objects to Body Science's Initial Infringement Contentions on the ground that the contentions fail to comply with the Court's Scheduling Order. Philips received initial infringement contentions stating that various combinations of products allegedly infringe 80 claims. From the contentions served, Philips is unable to decipher the specific allegations.

702913517

Instead, it appears that Body Science merely provided aggregated or exemplary allegations of infringement. Thus, Philips' Disclosure of Non-Infringement Contentions are limited by and respond only to the deficient contentions served by Body Science.

2.  Philips objects to Body Science's Initial Infringement Contentions on the ground that Body Science fails to provide a chart for each accused product separately.  Instead, Body Science only provides charts directed to groups of products. However, all of the products in those groups do not function in the same manner.  Accordingly, Philips is unable to decipher what specific portion, functionality, or operation is actually being accused in each of the accused products.

3.  Philips objects to Body Science's Initial Infringement Contentions on the ground that the contentions lack sufficient specificity for Philips to respond.  For example, Body Science repeatedly cites to various wireless standards without providing specificity as to what in the standard infringes with respect to Philips' products.  Instead, the contentions merely parrot the language of the claim and then cite to certain wireless standards, with virtually no citation to Philips' specific products.  Because the contentions lack any specific description or support from Philips' products, Philips is unable to decipher the specific features that have been accused.

Philips' investigation, research, and analysis of the issues in this case are ongoing. Philips expressly reserves the right to supplement its Initial Non-Infringement Contentions. Subject to the foregoing objections, Philips provides its Non-Infringement Contentions in Exhibit C based on its understanding of Body Science's Initial Infringement Contentions.

**B.      Philips' Production of Technical Materials**

Concurrent with this disclosure, Philips produces documents PHIL-BOD00009764 to PHIL-BOD00010350 and PHIL-BOD00010352 to PHIL-BOD00010847, which include

documents describing the operation of its accused products. Additional documents will be produced after issuance of a suitable protective order.

Dated: August 14, 2012                             Respectfully Submitted,


                                                    */s/ Jeremy A.M. Evans*
Claire Laporte (BBO# 554979)
Jeremy A. M. Evans (BBO#661048)
FOLEY HOAG LLP
Seaport World Trade Center West 155 Seaport Boulevard Boston, MA 02210-2600 617-832-1000
cll@foleyhoag.com
jevans@foleyhoag.com

Alan Grimaldi (*pro hac vice*)
Brian A. Rosenthal (*pro hac vice*)
Bryon T. Wasserman *(pro hac vice)*
MAYER BROWN LLP
1999 K. St. NW
Washington DC 20006
202-263-3000
*Attorneys for Defendant Philips Electronics North America Corporation*

## Certificate of Service

I, Jeremy A. M. Evans, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on August 14, 2012.

*/s/ Jeremy A. M. Evans*

Jeremy A.M. Evans