**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                      )
IN RE:  BODY SCIENCE LLC                )
PATENT LITIGATION                         )        MDL No. 1:12-md-2375-FDS
                                                      )
_____)
                                                      )
**_This Document Relates To_**:              )
                                                      )
BODY SCIENCE LLC,                         )
                                                      )
              **Plaintiff,**                         )        **Civil Action No.**
                                                      )        **12-10536-FDS**
              **v.**                                    )
                                                      )
PHILIPS ELECTRONIC                       )
NORTH AMERICA CORPORATION,      )
                                                      )
              **Defendant.**                       )
_____)

## MEMORANDUM AND ORDER ON MOTION TO STAY

**SAYLOR, J.**

        This is a patent dispute involving medical monitoring devices.  Plaintiff has brought suit

against four defendants for patent infringement; all four actions have been consolidated for

pretrial purposes pursuant to an order of the Judicial Panel on Multidistrict Litigation ("JPML").

Plaintiff Body Science LLC contends that defendants Philips Electronic North America

Corporation; A&D Engineering, Inc.; Polar Electro, Inc.; and LifeWatch Services, Inc., sell

medical monitoring devices that infringe on the claims of two of its patents:  U.S. Patent No.

6,289,238 ("the '238 patent") and U.S. Patent No. 7,215,991 ("the '991 patent").  Plaintiff seeks,

among other things, injunctive relief and monetary damages.[1]

_____

        [1] A suit against a fifth defendant, Boston Scientific Corp., has been dismissed.

Shortly after the start of discovery, defendant Philips filed a request for reexamination of the '238 and '991 patents by the United States Patent and Trademark Office ("the PTO"). Defendant Philips then moved to stay this suit pending reexamination of the patents-in-suit by the PTO.  Plaintiff opposes defendant's motion.  For the reasons set forth below, the Court will grant the motion to stay.

## I.      Background

### A.      The Asserted Patents

There are two patents at issue in this suit.  The first, the '991 patent, was issued by the PTO on May 8, 2007.  (Compl. ¶ 14).  The second, the '238 patent, was issued by the PTO on September 11, 2001.  (Compl. ¶ 15).  Both patents are entitled "Wireless Medical Diagnosis and Monitoring Equipment," and both disclose the use of medical and communications equipment to transmit medical information wirelessly.  Body Science currently owns the rights to both patents. (Compl. ¶¶ 14, 15).  The patents are set to expire in September 2014.  (Def. Mem. in Supp. Mot. to Stay, at 4).

### B.      Procedural Posture of the Present Action

Body Science initiated one action for patent infringement against five separate defendants on May 27, 2011, in the Northern District of Illinois, and filed an amended complaint in the same court on July 27, 2011.  The complaint alleges infringement of the '991 and '238 patents based on defendants' use of medical diagnostic and monitoring systems having at least one sensor for detecting an electrical, physical, chemical, or biological property of a patient, a digital-to-analog converter coupled to the sensor, and a digital transmitter and receiver for wireless communication with an evaluation station.  (*See, e.g.,* Compl. ¶ 22).  The complaint

2

seeks compensatory damages, an injunction from further infringement, destruction of all infringing products and systems, and an award of costs.  (Compl. ¶¶ A-F).

In August, 2011, all five defendants filed answers and counterclaims.  Defendants Philips, Boston Scientific, A&D, and Polar also filed motions to sever and transfer venue.  On March 6, 2012, the court granted defendants' motions to sever and transfer.  The case against Philips was transferred to the District of Massachusetts; the case against Boston Scientific was transferred to the District of Minnesota; the case against A&D was transferred to the Northern District of California; and the case against Polar was transferred to the Eastern District of New York.

On April 19, 2012, Body Science filed a motion before the JPML to transfer the case back to the Northern District of Illinois for coordinated pretrial proceedings.  On August 7, 2012, the JPML determined that centralization for pretrial purposes was proper, and transferred all five actions to this Court as an MDL matter.

The four remaining cases are at a relatively early stage in litigation.[2]  As of August, 2012, the status of each case was as follows:

- *Body Science v. Polar*: No status conference has been held, no scheduling order has been entered, no initial disclosures have been served, no infringement or invalidity contentions have been served or filed, and no discovery has taken place.

- *Body Science v. A&D*: No status conference has been held, no scheduling order has been entered, no initial disclosures have been served, no infringement or invalidity contentions have been served or filed, and no discovery has taken place.

- *Body Science v. LifeWatch*: Infringement and invalidity contentions have

---

[2] As noted, the suit against Boston Scientific has been dismissed.

been exchanged and some limited paper discovery has taken place.

- *Body Science v. Philips*: Infringement and invalidity contentions have been exchanged.  Some limited paper discovery has taken place, but no Protective Order is in place.

(Def. Philips' 8/15/2012 Notice at 3).

No claim construction briefing has been exchanged in any of the cases, and no *Markman* hearings have been held.

### C.   Request for Reexamination

On June 22, 2012, attorneys for defendant Philips filed requests for *ex parte* reexamination of the '238 and '991 patents by the PTO.  In its requests, Philips identified five prior-art references that it contends disclosed the features claimed in the '238 and the '991 patents.  On July 7, 2012, Philips moved to stay this suit pending reexamination of the patents-in-suit by the PTO.  On August 7, 2012, the PTO granted reexamination of all 87 claims of the '991 patent.  On August 13, 2012, the PTO granted reexamination of all 66 claims of the '238 patent.

*Ex parte* reexamination is a procedure by which any person may request that the USPTO reevaluate the patentability of an issued and unexpired US patent.  35 U.S.C. § 302.  "Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO."  *Canady v. Erbe Electrokmedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002).

The average pendency of an *ex parte* reexamination proceeding is 25.6 months.  (Def. Mem. in Supp. of Mot. to Stay, Ex. B).  The median pendency is 19.9 months.  (*Id.*).  Approximately 66% of these proceedings result in some change to the contested claims, and an additional 12% result in all claims being cancelled.  (*Id.*).

II.    **Standard**

District courts have "inherent power to manage their dockets and stay proceedings,

including the authority to order a stay pending conclusion of a PTO reexamination."   *Ethicon, Inc.*

*v. Quigg*, 849 F.2d 1422, 1426-1427 (Fed. Cir. 1988); *In re Columbia Univ. Patent Litig.*, 330 F.

Supp. 2d 12, 15 (D. Mass. 2004).   Courts have noted a number of advantages in granting a stay

pending reexamination:

> (1) all prior art presented to the Court will have been first considered by the
> USPTO with its particular expertise; (2) many discovery problems relating to the
> prior art can be alleviated by the USPTO examination; (3) in those cases resulting
> in effective invalidity of the patent, the suit will likely be dismissed; (4) the
> outcome of the reexamination may encourage a settlement without the further use
> of the Court; (5) the record of reexamination would likely be entered at trial,
> thereby reducing the complexity and length of the litigation; (6) issues, defenses
> and evidence will be effectively limited in pre-trial conferences after a
> reexamination; and (7) the cost of litigation will likely be reduced.

*Nidec Corp. v. LG Innotek Co., Ltd.*, 2009 WL 3673433, at *2 (E.D. Tex. Apr. 3, 2009) *(*quoting

*Datatreasury Corp. v. Wells Fargo & Co.,* 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006)).

In determining whether a stay is appropriate, courts consider the following factors:  (1)

whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving

party; (2) whether a stay would simplify the issues in question and trial of the case; and (3) the

stage of the litigation.  *Cynosure, Inc. v. Cooltouch Inc.*, 2009 U.S. Dist. LEXIS 70493, at *5 (D.

Mass. Aug. 10, 2009) (internal quotations omitted); *see also Gryphon Networks Corp. v. Contact

Ctr. Compliance Corp.*, 792 F. Supp. 2d 87, 90 (D. Mass 2011) (citing the same factors, but

referring to third factor as "whether discovery is complete and whether a trial date has been set.").

There is a "liberal policy in favor of granting motions to stay proceedings pending the

outcome of reexamination, especially in cases that are still in the initial stages of litigation and

where there has been little or no discovery." *Tse v. Apple Inc.*, 2007 WL 2904279, at *1 (N.D. Cal. Oct. 4, 2007); *see also Spa Syspatronic, AG v. Verifone, Inc*, 2008 WL 1886020, at *1 (E.D. Tex. Apr. 25, 2008).  This policy gives full effect to a process that was intended to "settle validity disputes more quickly and less expensively" than litigation, and to "allow courts to refer patent validity questions to the expertise of the [PTO]." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985).

**III.   <u>Analysis</u>**

   **A.   <u>Undue Prejudice</u>**

   The first factor is whether the stay would unduly prejudice, or present a clear tactical disadvantage to, plaintiff.  Plaintiff contends that defendant's motion to stay is merely a stalling tactic, and that it will be unduly prejudiced by a stay.  It alleges five ways that it would suffer undue prejudice:  (1) a stay during the reexamination proceeding would allow defendant to stall trial with an indefinite and extended delay;  (2) the delay could result in a loss of critical evidence;  (3) an *ex parte* reexamination proceeding would cause a financial disadvantage to plaintiff by forcing it to incur additional costs while defendant can simply sit on the sidelines; (4) the reexamination proceedings would take up virtually the entire remaining life of the patents, depriving plaintiff of any opportunity for injunctive relief; and (5) defendants in other cases would likely move to stay those cases if a stay is granted.  Defendant contends that plaintiff will not be prejudiced, and that adequate remedies will remain following a stay.

   It is certainly true that granting a stay will likely delay this case for at least a year, and plaintiff may suffer some disadvantage from a delay in the case's final disposition.  However, a stay can cause some prejudice to plaintiff without constituting *undue* prejudice.  Mere delay,

without more, does not constitute undue prejudice.  *Tse*, 2007 WL 2904279, at *4; *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007). This is particularly the case where, as here, the parties are not direct competitors.  *See, e.g., ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) ("prejudice is heightened when parties to litigation are direct competitors").

It is also true that the original patent filings for the invention involved in this case occurred nearly 20 years ago, and additional delay could lead to the loss of some evidence.  That fact, however, need not result in undue prejudice for at least two reasons.  First, given the nearly 20 years that have already passed since the invention, there have almost certainly already been significant changes in witness memory and availability.  It is unlikely that even two additional years would have a dramatic impact on the existence of relevant evidence.  Second, this Court can structure a stay to minimize the loss of evidence by requiring all parties to preserve relevant evidence and by allowing parties to take depositions of witnesses who are likely to become unavailable to testify in future proceedings.

Additional costs to the plaintiff that may result from reexamination will not create undue prejudice.  Such costs are inherent to the reexamination procedure, which nonetheless is a congressionally-endorsed alternative to litigation.  *See Sorensen v. Black & Decker Corp.*, 2008 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007).  Third parties are authorized by statute to request PTO reexamination of patents, and the possibility that such proceedings could result in the stay of a lawsuit was presumably known to Congress at the time the statute was enacted.  It simply cannot be the case that any *ex parte* reexamination proceeding, by nature of the fact that it requires plaintiff to expend resources without requiring defendant to expend resources,

7

automatically causes undue prejudice.

Plaintiff's contention that it would be prejudiced by a stay because it would render its request for injunctive relief moot is also unpersuasive.  First, it is far from certain that plaintiff would receive injunctive relief, even if it prevails.  There is no *per se* rule as to whether non-practicing entities do or do not receive an injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006).  However, non-practicing status is certainly a factor weighing against injunctive relief, because there is less risk of irreparable harm.  *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 2010 WL 1607908, at *1 (W.D. Wis. Apr. 19, 2010).  Second, even if plaintiff does obtain injunctive relief at the conclusion of trial, such relief would last a relatively short time.  The patents-in-suit are scheduled to expire in September 2014.  Trial in this case is scheduled to begin in May 2014.  Even assuming no further delay, plaintiff likely stands to gain about three months of injunctive relief in its best-case scenario.  Thus, the core of plaintiff's case is damages, and the absence of a short period of injunctive relief is unlikely to cause significant prejudice.

Finally, the argument that granting a stay would encourage the tactical use of the reexamination process to delay other patent lawsuits is based on pure conjecture.  Without more, this cannot cause undue prejudice.

It thus appears that plaintiff will suffer some, but not undue, prejudice from a stay.

   **B.**     <u>**Simplification of the Issues**</u>

Plaintiff's case against Philips involves 80 claims asserted against 17 products.  When combined with the related cases that have been consolidated for pretrial purposes, the case involves more than a hundred claims asserted against dozens of products and product families.  If

this case proceeds to trial with all claims intact, plaintiff will have to prove infringement as to each claim and each product.  Similarly, defendants will likely argue noninfringement or invalidity as to each contested claim.  The case will involve extensive claim construction, and the breadth of the allegations involved may require wide-ranging discovery.

If a reexamination proceeding were to narrow or invalidate any of the asserted claims, the scope of the litigation could be significantly simplified.  Statistically, it is more likely than not that at least some claims will be narrowed or invalidated, given that the PTO changes at least one claim in approximately 64% of all *ex parte* reexaminations, and cancels all claims in 12% of all *ex parte* reexaminations.

Plaintiff contends that the reexamination proceedings will not simplify the issues in the case for two reasons:  first, because defendant will not be bound by the PTO's determination, and second, because the proceedings are unlikely to eliminate all issues.  But the question is not whether the reexamination will clearly eliminate all need for a trial; rather, it is whether the reexamination is likely to simplify the issues for trial.  Even if only some of the claims were narrowed or invalidated, the proceedings could substantially simplify the dispute.

In short, this case involves a large number of claims and many different products, and a stay pending reexamination could reduce discovery disputes, narrow the issues, and reduce the length and complexity of a potential trial.  If the Court goes forward without waiting for the reexamination results, it risks wasting both judicial and client resources addressing the validity of patent claims that could ultimately be changed or canceled by the PTO.  *See Dura Global Technologies, LLC v. Magna Intern. Inc.*, 2011 WL 5039883, at *5 (E.D. Mich. Oct. 24, 2011). This factor accordingly weighs heavily in favor of a stay.

C.      <u>**Stage of the Litigation**</u>

Defendant's filed requests for reexamination of the patents on June 22, 2012.  It filed a motion to stay this case shortly thereafter.  At the time, 13 months had passed since the lawsuit was filed, and the parties were in the early stages of discovery.

"Stays pending reexamination are routinely granted for cases in the initial stages of litigation." *Implicit Networks*, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009).  In contrast, stays are often denied when the motion to stay is filed after significant litigation has occurred. *See, e.g., Cynosure, Inc. v. Cooltouch Inc.*, 2009 WL 2462565 (D. Mass. Aug. 10, 2009) (stay denied where defendant didn't inform the court that it was pursuing a request for reexamination until the *Markman* hearing, after the close of all fact discovery and only two days before the close of expert discovery); *Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 3613851 (D. Del. Sept. 8, 2010) (stay denied where fact and expert discovery had both been completed two years earlier); *Nidec Corp. v. LG Innotek Co., Ltd.*, 2009 WL 3673433, at *7 (E.D. Tex. Apr. 3, 2009) ("This case was filed on March 6, 2007.  On October 3, 2008—almost nineteen months later—defendants filed the request for reexamination. Defendants filed the instant Motion on January 19, 2009–over twenty-two months after the complaint was filed.").

Here, plaintiff acknowledges that defendant Philips filed its request for reexamination "just after [it] was served with discovery."  (Pl. Opp. Br. at 4).  Defendant requested the stay after plaintiff had provided initial disclosures and served some discovery, but before defendant had been noticed with any depositions.  Claim-construction briefing is scheduled to take place in January 2013, and the *Markman* hearing is currently scheduled for March 2013.  Trial is not scheduled to begin until the summer of 2014.  All of the other consolidated cases are at similar or

earlier points in the discovery process.

It is certainly true that defendant could have initiated reexamination proceedings significantly earlier than it did.  However, the case is still in the early stages of discovery.  Particularly given how extensive discovery will likely need to be in light of the large number of claims and products at issue, the steps that plaintiff has already taken by providing initial disclosures and serving some discovery are relatively minor as compared to what still needs to be done.

**IV.     <u>Conclusion</u>**

Under the circumstances, the Court finds that there is good cause to stay this case until the PTO has reexamined the patents-in-suit.  Accordingly, the Court will grant the motion to stay, without prejudice to subsequent motions to modify or vacate for good cause shown.  In order to ensure that plaintiff does not suffer unnecessary prejudice, the stay will be subject to the following conditions:

> 1.  Any party, by motion and for good cause shown, may seek leave during the stay to take the deposition of a witness in order to preserve his or her testimony if there is a demonstrable likelihood that the witness will be unavailable to testify in a future proceeding.
>
> 2.  All parties shall report in writing to the Court within 30 days as to what steps they have taken to preserve evidence potentially relevant to this matter, including preservation of both electronic and paper records.
>
> 3.  The Court will schedule status conferences approximately every six months to ascertain the progress of the reexamination proceeding and the appropriateness of maintaining the stay.

For the foregoing reasons, defendants' motion to stay is GRANTED, subject to the conditions listed above.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  November 2, 2012            United States District Judge